### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

**CRIMINAL NO. 05-100015-PBS**
**(Magistrate Judge Bowler)**

_____
                                                    )
UNITED STATES OF AMERICA                             )
                                                    )
                                                    )
         v.                                          )
                                                    )
ELEANOR GOULD,                                       )
                                                    )
                  Defendant.                         )
                                                    )
_____)

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HER PRE-TRIAL MOTIONS FOR (1) INSPECTION OF CERTAIN GRAND JURY MATERIALS; (2) DISCOVERY OF THE IDENTITIES OF CERTAIN LAW ENFORCEMENT OFFICERS; (3) DISCOVERY OF THE FED.R.CRIM.P. 6(e)(3)(B) NOTICES TO THE COURT; AND (4) FOR A SHOW CAUSE HEARING RELATED TO ALLEGED GOVERNMENT MISCONDUCT**

#### INTRODUCTION

Defendant Eleanor Gould submits this memorandum in support of her motions for:

(1)      Inspection of certain Grand Jury testimony, documents and colloquy;

(2)      Discovery of the Identity of Certain Law Enforcement Officers who made improper statements to the media;

(3)      Discovery of the Fed.R.Crim.P. 6(e)(3)(B) Notice that the U.S. Attorney's Office ("USAO") gave to the Court identifying the law enforcement officers to whom grand jury disclosures had been made and certifying that those officers had been advised regarding grand jury secrecy; and

(4)      A Show Cause Hearing Related to Alleged Government Misconduct.

#### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Ms. Gould is a 48-year-old Peabody resident who, until this indictment, had been

employed for more than 15 years at the Metropolitan Credit Union in Peabody.

She is charged in the indictment with a single count of structuring a currency transaction for the purpose of evading the currency transaction reporting requirements, in violation of 31 U.S.C. §5324(a).  A copy of the simple three-page indictment is attached hereto as Exhibit A.  It contains no allegations regarding the source of the alleged funds or the alleged reasons why Ms. Gould engaged in the alleged structuring.

### A.     The Indictment Irregularity.

The current indictment – which is <u>not</u> a superseding indictment, but rather a <u>substitute</u> indictment – was not the first indictment handed up in this case.  In what can only be described as bizarre, on January 26, 2005, the grand jury foreperson handed up an earlier version of the indictment that was signed by both the foreperson and the prosecutor.  A copy of that earlier version of the indictment is attached hereto as Exhibit B.  It, too, contains a count of structuring (although the wording is different).  It also contains a forfeiture count.

The following day, January 27, the foreperson handed up the current indictment (Exhibit A), which was also dated January 26 and which was also signed by the foreperson and the prosecutor.

This strange development is explained (somewhat) by the "Government's Motion to Substitute Indictment" that accompanied the hand-up of Indictment Number 2 (i.e. Exhibit A).  According to the government's Motion (copy attached hereto as Exhibit C), "on March [sic] 26, 2005, the grand jury returned" the real indictment, Exhibit A.  "The indictment was properly signed by the grand jury foreperson and the Assistant U.S. Attorney."  The Motion continues:

> Inadvertently an earlier draft of the indictment was provided to the courtroom clerk.  This earlier draft had not been voted on by the grand jury and had not been signed by the foreperson or the Assistant United States Attorney.  Without the knowledge of any of the parties, the return was accomplished using this earlier draft.  The undersigned Assistant United States Attorney learned of this later on January 26, 2005, when checking the computerized docket.  On January 27, 2005,

the foreperson of the grand jury appeared again before the Court and the correct indictment was returned to the Court. * * * The signatures of the foreperson and Assistant United States attorney had been affixed to the indictment on January 26, 2005.

The government's motion does not explain how a prosecutor and the grand jury foreperson could return the "draft" indictment "[w]ithout the knowledge of any of the parties." Nor does it explain how the prosecutor's and the foreperson's signatures both came to be on the "draft" indictment when, as stated in the government's motion, "[t]he earlier draft. . . had not been signed by the foreperson or the Assistant United States Attorney".

In any event, because of this irregularity, Ms. Gould seeks to inspect the grand jury minutes to insure that the indictment against her was, indeed, the indictment voted by the grand jury.

### B.      <u>The Improper Statements by Law Enforcement Officers to the Media.</u>

Attached hereto as Exhibit D is an Article that appeared in the February 2, 2005 edition of the *Salem Evening News*.  Headlined "Police: Bank teller laundered son's drug money," the Article contains numerous factual allegations that go well beyond the indictment, some of which are demonstrably false, and all of which are prejudicial and in violation of Local Rules, Department of Justice Rules and, perhaps, Fed.R.Crim.P. 6(e).

In contrast to the simple indictment that alleges only structuring, the *Salem News* Article makes, *inter alia,* the following statements (all sourced to law enforcement officers):

- "Police said last night they believe the cash Gould deposited was money her son made selling drugs and that she concocted the structuring scheme to avoid detection of the source of the cash." [This statement formed the basis of a large pullout below the headline.]

- "A Peabody woman appeared yesterday in District Court in Boston to face charges that she skirted federal banking laws to launder $18,000 cash that her son allegedly pocketed selling OxyContin."

- "On August 23, less than a week after her son was indicted, Eleanor Gould allegedly deposited $9,500 cash into the joint account at the Metropolitan Credit Union." [This statement is demonstrably false. Eleanor Gould's son was not indicted until approximately one year after Ms. Gould's alleged structuring activities.]

- "Investigators allege that Gould was aware of the federal guidelines [i.e. the structuring law] because of her position at the credit union and that she purposely deposited less than $10,000 to avoid having it reported to the authorities."

The Article concludes that "[t]he case was investigated by the Internal Revenue Service, the Drug Enforcement Administration, the Food and Drug Administration, state police, the Essex County Sheriff's Department, the Cape Ann Drug Task Force and the Peabody Police Drug Unit."

This information, released to the media in the community where Ms. Gould lives, is extremely prejudicial as well as outrageously unfair and harmful to Ms. Gould's reputation.  The quoted law enforcement officers have apparently told the media that Ms. Gould engaged in a far more serious crime – money laundering of drug proceeds – than that with which she has been charged.  Moreover, they have implied that the money in question was drug money and that Eleanor Gould had knowledge that it was drug money by claiming that a week before the alleged structuring, Ms. Gould's son was indicted for drug trafficking.

These highly prejudicial money-laundering allegations likely will never be admitted into evidence at Ms. Gould's trial.  On information and belief, the government will be unable to

4

produce evidence either that the allegedly structured funds were drug proceeds or that Ms. Gould

had knowledge that her son was an alleged drug dealer.  The "evidence" cited by the law

enforcement officers to the media – i.e. that Ms. Gould's son was indicted on drug trafficking the

week before Ms. Gould allegedly structured the funds – is simply false.  Ms. Gould's son was

not indicted until approximately one year <u>after</u> Ms. Gould allegedly structured the funds.

The unfair prejudice was magnified by the (ironic) fact that Ms. Gould and her counsel –

unlike the unnamed law enforcement sources quoted in the Article – did feel themselves

constrained by the rules (particularly Local Rule 83.2A) and, therefore, were unable to respond

in kind.  As the Article notes, Ms. Gould referred the reporter to her counsel who, "[i]n a short

statement. . . wrote, 'Ms. Gould has (pleaded) not guilty.  Court rules prohibit me from

discussing the case any further.' "

## **<u>ARGUMENT</u>**

Ms. Gould seeks to inspect the following grand jury materials: (1) all evidence

(testimonial and documentary) that was presented in support of the indictment; (2) all colloquy

other than testimony that was part of the presentation of the case for indicting Ms. Gould; and (3)

all evidence (testimonial and documentary) referring to Ms. Gould that was presented to the

grand jury other than for the purpose of seeking an indictment of Ms. Gould (e.g. any testimony

referring to Ms. Gould that was offered in connection with the indictment of her son, Richard W.

Gould).[1]

---

[1]  Ms. Gould requested that the government provide the grand jury testimony and colloquy that is
being sought by this Motion in an April 15, 2005 discovery letter to the government, a copy of
which was filed with the Court.  In an April 26, 2005 responsive letter, a copy of which was filed
with the Court, the government declined the request.

Ms. Gould also seeks the identities of the law enforcement officials who were the sources of information for the *Salem News* Article.[2]

Ms. Gould further seeks discovery of the required Fed.R.Crim.P. 6(e)(3)(B) Notice ("Notice") provided to the Court by the U.S. Attorney's Office ("USAO"), identifying the law enforcement officers to whom grand jury disclosures had been made and certifying that those officers had been advised regarding grand jury secrecy.

Finally, Ms. Gould seeks a hearing into the alleged misconduct of the law enforcement officials who apparently made the statements to the *Salem News*.

The *Salem News* Article provides ample grounds for all of the requested relief. The dosey-doe with the draft indictment/substitute indictment provides an independent ground for reviewing the testimony and colloquy before the grand jury that voted the indictment against Ms. Gould.

A.    **Several Rules Prohibit the Statements of the Law Enforcement Officers to the Media and Entitle Ms. Gould to Relief.**

The improper statements that law enforcement officials appear to have made to the *Salem News* are of particular concern because of the great likelihood for such prejudicial information to taint the judicial process and compromise any expectation of fundamental fairness. At least three different rules apply to the present situation, each of which is "intended, in whole or in part, to protect a defendant's right to a fair trial." United States v. Flemmi, 233 F. Supp.2d 75, 78 (D. Mass. 2000)(Wolf, J.).

1.    **Federal Rule of Criminal Procedure 6(e)**

Federal Rule of Criminal Procedure 6(e) ("Rule 6(e)") states in relevant part:

---

[2]  In the April 15, 2005 letter referenced in footnote 1, *supra*, Ms. Gould requested that the government provide this information. In its April 26 response also referenced in footnote 1, the government declined the request.

**(2)    Secrecy.**

**(B)**    Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury:

* * *

**(vi)**  an attorney for the government; or

**(vii)**  a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii).

**(3)    Exceptions.**

**(A)** Disclosure of a grand-jury matter – other than the grand jury's deliberations or any grand juror's vote – may be made to:

* * *

**(ii)** any government personnel – including those of a state. . . – that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law; . . . .

**(B)** A person to whom information is disclosed under Rule 6(e)(3)(A)(ii) may use that information <u>only</u> to assist an attorney for the government in performing that attorney's duty to enforce federal criminal law.  An attorney for the government must promptly provide the court that impaneled the grand jury with the names of all persons to whom a disclosure has been made, and must certify that the attorney has advised those persons of their obligation of secrecy under this rule.

(emphasis added.)

In <u>Flemmi</u>, the Court examined the framework for assessing potential Rule 6(e)(2)

violations:  once a defendant makes out a *prima facie* case for a violation, a court must conduct a

"show cause" hearing to determine whether the government committed misconduct.  <u>See</u>

<u>Flemmi</u>, 233 F. Supp.2d at 81; <u>see also</u> <u>In re Sealed Case No. 98-3077</u>, 151 F.3d 1059, 1067-68

(D.C. Cir. 1998).  At the hearing, the burden shifts to the government to explain the release of

grand jury information and rebut the notion that the government violated the Rule 6(e) prohibition on such dissemination.  See In re Sealed Case No. 98-3077, 151 F.3d at 1068. Should this examination result in a determination that Rule 6(e) has been violated, there is a range of sanctions that may be imposed, including imprisonment for criminal contempt, an injunction prohibiting government personnel from speaking to the media, and dismissal.[3]  See Flemmi, 233 F. Supp.2d at 86.  Of course, before focusing on appropriate sanctions, it first must be determined whether the alleged government misconduct amounts to a rule violation.  See id. ("If the court finds that a violation of an enforceable standard has been established, [the defendant] will be permitted to participate in the proceedings to determine the appropriate sanction or remedy.")

A defendant's burden in establishing his prima facie case is "relatively light[,]" as "[t]he determination is typically based solely on an assessment of news Articles."  Id. at 81 (and cases cited therein).  The Court further explained that "[t]he Articles submitted need only be susceptible to an interpretation that the information reported was furnished by an attorney or agent of the government [.]"  Id. (citing In re Sealed Case No. 98-3077, 151 F.3d at 1068 n.7). Ms. Gould more than satisfies this burden here, as the *Salem News* Article not only identifies its sources as being law enforcement officials and therefore clearly government agents, but also, the nature of the alleged evidence is such that the source must have been someone involved in the investigation, as the comments go well beyond the indictment's contents. See id.  Under the burden-shifting paradigm, this Court must now require that the government "show cause why it

---

[3] Similarly, the same range of remedies and sanctions are available for violations of Local Rule 83.2A or 28 C.F.R. § 50.2, discussed *infra*.  See Flemmi, 233 F. Supp.2d at 86.

should not be held responsible for the publicity concerning the grand jury's proceedings." Id. at 83.

In order to properly evaluate the nature and severity of this potential Rule 6(e) violation, the government must disclose the requested discovery: the Notice, the identity of the law enforcement officials who actually made the improper statements to the media, and certain grand jury testimony, documents and colloquy.[4]  Such disclosure is necessary, because in order to determine whether a Rule 6(e) violation has in fact occurred, Ms. Gould must know what information and which persons were before the grand jury, as well as who had knowledge of the proceedings.  Cf. United States v. Pimental, 199 F.R.D. 28, 37 (D. Mass. 2001)(Gertner, J.)(finding the defendants were entitled to documents and information concerning the disclosure of grand jury materials "to determine the scope and possible impact of the Rule (6)(e) violations."); but cf. United States v. Mazzola, 183 F. Supp.2d 195, 198 n.3 (D. Mass. 2001)(Bowler, M.J.)(disagreeing with the grant of discovery to determine scope and impact). Ms. Gould readily has made out the case that highly improper statements were made to the

---

[4] Ms. Gould should be allowed to participate in this hearing.  Although the court in In re Sealed Case No. 98-3077 and the Court in Flemmi, conducted hearings on an *ex parte* or *in camera* basis, such extreme measures, which deprive Ms. Gould of both her rights and information pertinent to the violation thereof, are not required in the instant situation.  In those cases, the grand jury investigation still was ongoing and therefore there was a concern over impeding such investigations or compromising the process, as opposed to here, where the grand jury investigation and proceedings apparently have ended.  As one court has noted, "*[I]n camera, ex parte* submissions 'generally deprive one party to a proceeding of a full opportunity to be heard on an issue,' . . . and thus should only be used where a compelling interest exists. . . ." In re Sealed Case No. 98-3077, 151 F.3d at 1075 (internal citations omitted).  The same court went on to identify the "compelling interest:" that the show cause hearing was to be conducted during an *ongoing* grand jury investigation.  See id.; see also Flemmi, 233 F. Supp.2d at 86 (ordering that the government's showing be made on an *ex parte* basis "in order to minimize the risk that any continuing investigation will be injured unnecessarily.").  Given that the grand jury proceedings related to Ms. Gould appear to have concluded, there is no compelling interest to justify excluding Ms. Gould from fully participating in the hearing.

media, and at least based on the information available at present, the natural conclusion is that

the source for this material was the grand jury proceedings.  The materials and information

sought by Ms. Gould are essential to determining if in fact a Rule 6(e) violation has occurred.

**2.     Massachusetts District Court Local Rule 83.2A ("Release of Information by Attorneys")**

Local Rule 83.2A of the Massachusetts Local Rules ("Rule 83.2A") provides in relevant

part:

> No lawyer or law firm shall release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which he or the firm is associated, <u>if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice</u>.
> * * *
> From the time of arrest, issuance of an arrest warrant, or the filing of a complaint, information, or indictment in any criminal matter until the commencement of trial or disposition without trial, a lawyer or law firm associated with the prosecution or defense shall not release or authorize the release of any extrajudicial statement, which a reasonable person would expect to be disseminated by means of public communication, relating to that matter and concerning:
> * * *
> **(6)**  <u>Any opinion as to the accused's guilt or innocence as to the merits of the case or the evidence in the case.</u>

(Emphasis added).

Rule 83.2A is designed to prevent extrajudicial statements that might interfere with a fair

trial or otherwise prejudice the due administration of justice.  Although by its terms, Rule 83.2A

applies only to attorneys, at least one court has intimated that its prohibitions may well extend to

law enforcement officials as well.  In <u>Flemmi</u>, the Court described Rule 83.2A as a supplement

to Rule 6(e) and noted that Rule 83.2A was part of the Court's response to a Supreme Court

directive that

> [t]he courts must take such steps by rule and regulation that
> will protect their processes from prejudicial outside interferences.
> Neither prosecutors, counsel for the defense, the accused, witnesses,
> court staff nor law enforcement officers coming under the jurisdiction
> of the court should be allowed to frustrate its function.

Flemmi, 233 F. Supp.2d at 79 (citing Sheppard v. Maxwell, 384 U.S. 333, 363 (1966)).

The Flemmi Court went on to note that although "[t]he degree to which Local Rule 83.2A applies to the conduct of law enforcement officers may be debatable," improper disclosures by law enforcement officers are just as dangerous to the "integrity of judicial proceedings" as are disclosures by attorneys. Flemmi, 233 F. Supp.2d at 79. The Court underscored this assessment by noting that the Court's power under Local Rule 83.2B, "Special Orders for the Protection of the Accused or the Litigants in Widely Publicized or Sensational Criminal or Civil Cases," permits it to issue orders restricting the comments of not only attorneys, but also agents. See id. The clear purpose of Rule 83.2A, regardless of to whom it is applied, is to protect the judicial process and ensure that both parties receive a fair trial.

Further evidence of the close relationship between Rule 6(e) and Rule 83.2A is the fact that at least one court has recognized that the burden-shifting Rule 6(e) framework is also the appropriate means to address potential Rule 83.2A violations. See id. at 81. Accordingly, Ms. Gould must make a *prima facie* case for a Rule 83.2A violation, and then the burden will shift to the government to demonstrate why it should not be held responsible for such violation.

While Ms. Gould has no reason to believe that the prosecutor authorized these impermissible disclosures, or even that he knew about them, regardless of such knowledge the prosecutor still had a duty to prevent such disclosures by advising law enforcement officials of their obligations, akin to what a prosecutor must do under Rule 6(e)(3)(A)(2). In any event, Ms. Gould easily makes out her *prima facie* case. The statements contained in the *Salem News*

11

Article clearly violate Rule 83.2A.  Not only do the statements directly address issues of "the accused's guilt or innocence as to the merits of the case or the evidence in the case," but also, they unequivocally pose *at least* a reasonable likelihood of interfering with a fair trial.  See Rule 83.2A.   This extremely prejudicial information was released to the media in Ms. Gould's community, was undoubtedly read and discussed by her peers, and ultimately may affect the judicial process.  Furthermore, many of the allegations contained in the Article likely will never be admitted into evidence at Ms. Gould's trial.  As one court has noted:

> It is fundamental to our system of justice that a defendant has a right to a fair trial, untainted by prejudicial information that is not presented to the jury in court. . . . Therefore, it is important that information presented to a grand jury, or developed in another investigation, that may prove to be inadmissible at trial not be brought to the attention of potential jurors in violation of Rule 6(e) or Local Rule 83.2A.

United States v. Flemmi, 233 F. Supp.2d 113, 116 (D. Mass. 2000)(Wolf, J.).

Perhaps of even greater significance is the fact that the statements allege that Ms. Gould committed a crime with which she was not charged, and a far more serious crime at that.  One of the interests allegedly served by preserving grand jury secrecy is the "assur[ance] that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 219 (1979).  This purpose has been frustrated here, since the *Salem News* statements smear Ms. Gould and her reputation with allegations of more-serious charges than the grand jury voted.

Although the issue of applicability of Rule 83.2A to law enforcement officials may be somewhat of an open question, it flies in the face of reason to suggest that prohibited statements are not problematic just because they were made by law enforcement officials rather than by the prosecutor; no matter which part of the government is the source, the rule's goals clearly will have been subverted if such prohibited statements are allowed to go unchecked.  In this regard, it

bears noting that the law enforcement officials themselves likely realized it was improper to provide the type of information contained in their statements.  The unnamed law enforcement sources undoubtedly requested anonymity – why else would the reporter not identify them – an action that strongly suggests they realized the impropriety of making the statements that they made to the *Salem News*.

### 3.     Department of Justice Regulation found at 28 C.F.R. § 50.2

The regulation found at 28 C.F.R. § 50.2 ("DOJ Regulation") states in relevant part:

> (6) The release of certain types of information generally tends to create dangers of prejudice without serving a significant law enforcement function. Therefore, personnel of the Department should refrain from making available the following:
>
> (i) Observations about a defendant's character;
>
> * * *
>
> (v) Statements concerning evidence, or argument in the case, whether or not it is anticipated that such evidence or argument will be used at trial.

(Emphasis added.)

Given the similarities between the DOJ Regulation and both Rule 6(e) and Rule 83.2A, it is not surprising that the Flemmi court identified the Rule 6(e) framework as the proper one for evaluating possible violations of the DOJ Regulation.  See Flemmi, 233 F. Supp.2d at 81.  And again, Ms. Gould easily makes out a *prima facie* case for a violation.  The DOJ Regulation,

which pertains to *all* DOJ personnel, including law enforcement officials,[5] clearly prohibits the release of the type of information contained in the *Salem News* Article.  Therefore, the government must demonstrate at a hearing why it should not be held accountable for the impermissible dissemination to the local media of such statements about Ms. Gould's character and the evidence against her.

> **B.**    **The Bizarre Irregularity of the Indictment Process Necessitates Assurance of Regular and Trustworthy Grand Jury Proceedings.**

An oft-cited reason for limiting and/or prohibiting access to grand jury materials is that grand jury proceedings are said to have a "presumption of regularity."  See, e.g., United States v. Ayeki, 289 F. Supp.2d 183, 186 (D. Conn. 2003)(Arterton, J.).  However, such a presumption is not warranted here, where there appears to be a host of confusion surrounding the indictment and the process by which it was obtained.  As discussed above, the current indictment was not the first indictment handed up in this case, but rather it is a "substitute" indictment, handed up a day *after* an earlier version (also signed by both the foreperson and prosecutor) was handed up.  The versions differ significantly in that the earlier version contains different wording on the structuring charge as well as an additional count of forfeiture; these two "versions" are entirely separate documents.  The Government's Motion to Substitute Indictment, attached hereto as Exhibit C, fails to clarify how this bizarre chain of events occurred.  And indeed, the motion

---

[5] 28 C.F.R. § 50.2 concerns all DOJ personnel, including law enforcement officials.  Of course, Ms. Gould does not know the identity of the *Salem News* Article sources, and whether such officials are federal personnel or state or local officials.  However, even if the sources are not federal government employees, it is entirely possible that the law enforcement officials were cross-designated as federal agents for the purposes of this investigation, a fairly common practice on joint federal/state/local task forces of the type alluded to in the Article.  See also Flemmi, 233 F. Supp.2d at 80 n. 4 (noting that state and local law enforcement agents had been cross-designated as federal agents for that investigation).  Should this Court grant Ms. Gould's motions to discover the Notice and the identities of certain law enforcement officers, the matter of the DOJ Regulation's applicability could be resolved.

raises more questions than it purportedly answers. Significantly, it is still unclear how the "Draft" indictment could be returned "[w]ithout the knowledge of any of the parties," but still contain the signatures of both the prosecutor and the foreperson. Also, it is difficult to reconcile the government's claim that neither the foreperson nor the prosecutor signed the earlier version of the indictment, with the fact that the copy that was filed with the Court and provided to Ms. Gould's counsel, contains both signatures.

Such highly irregular activity in the grand jury proceedings undermines any typical presumption of regularity, and the only way to ameliorate the situation is to grant Ms. Gould's motion to inspect the grand jury testimony, documents and colloquy pertaining to Ms. Gould's indictment. Only by inspecting the grand jury minutes, can Ms. Gould be certain that the indictment presently before the Court is in fact, the indictment voted on by the grand jury, and that nothing improper occurred in the obtaining of such indictment.

## <u>CONCLUSION</u>

For the foregoing reasons, Ms. Gould respectfully requests that her Pre-Trial Motions be granted, thereby awarding her the following relief:

1.    Inspection of certain Grand Jury materials:

    (A)    All evidence (testimonial and documentary) that was presented in support of the indictment;

    (B)    All colloquy other than testimony that was part of the presentation of the case for indicting Ms. Gould; and

    (C)    All evidence (testimonial and documentary) referring to Ms. Gould that was presented to the grand jury other than for the purpose of seeking an indictment of Ms. Gould (e.g. any testimony referring to Ms. Gould that was offered in connection with the indictment of her son, Richard W. Gould);

2.    Discovery of the Identity of Certain Law Enforcement Officers who made improper statements to the media;

3.  Discovery of the Fed.R.Crim.P. 6(e)(3)(B) Notice that the U.S. Attorney's Office ("USAO") gave to the Court identifying the law enforcement officers to whom grand jury disclosures had been made and certifying that those officers had been advised regarding grand jury secrecy; and

4.  A Show Cause Hearing Related to Alleged Government Misconduct.

ELEANOR GOULD

By her attorneys,

/s/ *Elizabeth J. Koenig*
Peter E. Ball, BBO #546031
Elizabeth J. Koenig, BBO #647122
SALLY & FITCH LLP
225 Franklin Street
Boston, MA 02110
(617)  542-5542

May 27, 2005

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA       )
                               )    CRIMINAL NO. *05- 10015-PBS*
          v.                   )
                               )
                               )    Structuring - 31 U.S.C.
ELEANOR GOULD,                 )    § 5324(a)(3)
          Defendant            )
                               )    Aiding and Abetting - 18
                               )    U.S.C. § 2
                               )

**INDICTMENT**

**Count One:    (Structuring - 31 U.S.C. §§ 5324(a)(3); Aiding and
               Abetting - 18 U.S.C. § 2).**

The Grand Jury charges that:

From on or about August 23, 2003 to on or about August

25, 2003, at Peabody, in the District of Massachusetts,

**ELEANOR GOULD**

defendant herein, for the purpose of evading the currency

transaction reporting requirements imposed upon domestic

financial institutions, did knowingly structure, attempt to

structure, and assist in structuring her transactions with one

or more domestic financial institutions by engaging in the

following financial transactions:

**Exhibit A**

| Transaction | Amount | Financial Institution |
| --- | --- | --- |
| Cash Deposit into Account No. 179823360 on August 23, 2003 | $9,500 | Metropolitan Credit Union |
| Cash Deposit into Account No. 00880446364 on August 25, 2003 | $8,500 | Eastern Bank |
| Purchase of Bank Check Payable to Richard W. Gould on August 25, 2003 | $8,500 | Eastern Bank |
| Deposit of Bank Check into Account No. 179823360 on August 25, 2003 | $8,500 | Metropolitan Credit Union |

All in violation of Title 31, United States Code, Section 5324(a)(3); Title 31, Code of Federal Regulations, Section 103.11; and Title 18, United States Code, Section 2.

2

**A TRUE BILL**

_____
FOREPERSON OF THE GRAND JURY

DAVID G. TOBIN
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS; January 26, 2005.

    Returned into the District Court by the Grand Jurors and filed.


_____
DEPUTY CLERK

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                       )    CRIMINAL N **05 CR 10015 PBS**
         v.       )
                       )
ELEANOR GOULD       )    31 U.S.C. § 5324(a)(3)
                       )
                       )

### INDICTMENT

**COUNT ONE**:     **(31 U.S.C. § 5324(a)(3) - Structuring Transactions to Evade Reporting Requirement)**

The Grand Jury charges that:

    Between on or about August 23, 2003 and on or about August 25, 2003, at Peabody, in the District of Massachusetts,

**ELEANOR GOULD**

defendant herein, did knowingly and for the purpose of evading the requirements of section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structure and assist in structuring the following transactions with domestic financial institutions and did so while violating another law of the United states:

    On August 23, 2003, the defendant deposited $9,500 in United States currency into account 179823360 at the Metropolitan Credit Union in Peabody, Massachusetts; and on August 25, 2003, the defendant deposited $8,500 in United States currency into account 00880446364 at the Eastern Bank in Peabody, Massachusetts.  On August 25, 2003, shortly after making the above-described deposit at the Eastern Bank, the defendant caused a bank check for $8,500

to be drawn on account 00880446364 at the Eastern Bank.  On August 25, 2003, the defendant caused the above-described bank check to be deposited into account 179823360 at the Metropolitan Credit Union.

All in violation of Title 31, United States Code, Section 5324(a)(3) and Title 18, United States Code, Section 2.

FORFEITURE ALLEGATION

[31 U.S.C. §§ 5317(c), 5324(a)]

1.    As a result of the offenses in violation of 31 U.S.C. § 5324 charged in Count One of this Indictment,

**ELEANOR GOULD**

defendant herein, shall forfeit to the United States all property, real and personal, involved in the offense, and any property traceable thereto.

2.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 31 U.S.C. § 5324(c)(1)(B), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described in paragraph 1 above.

All in violation of Title 31, United States Code, Section 5324.

**A TRUE BILL**

_____
FOREPERSON OF THE GRAND JURY

_____
DAVID G. TOBIN
ASSISTANT U.S. ATTORNEY


DISTRICT OF MASSACHUSETTS; January 26, 2005.

    Returned into the District Court by the Grand Jurors and
filed.

_____
DEPUTY CLERK

*11 37A*

-4-

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In Re: Grand Jury      )
                   )
                   )   MBD No.:
                   )
                   )
                   )

## GOVERNMENT'S MOTION TO Substitute INDICTMENT

Now comes the United States, by its attorneys, Michael J. Sullivan, United States Attorney, and David G. Tobin, Assistant U.S. Attorney, and hereby moves this Honorable Court to substitute the Indictment charging Eleanor Gould with structuring in violation of 31 U.S.C. § 5324(a)(3), that was returned to the Court on January 26, 2005, with the Indictment charging Eleanor Gould with structuring in violation of 31 U.S.C. § 5324(a)(3), that was returned to the Court on January 27, 2005. In support of this motion, the United States provides the following information. On March 26, 2005, the grand jury returned an indictment charging Eleanor Gould with structuring (Exhibit A). The indictment was properly signed by the grand jury foreperson and the Assistant United States Attorney. Inadvertently an earlier draft of the indictment was provided to the courtroom clerk. This earlier draft had not been voted on by the grand jury and had not been signed by the foreperson or the Assistant United States Attorney. Without the knowledge of any of the parties, the return was accomplished using this earlier draft. The undersigned Assistant United States attorney learned of this

later on January 26, 2005, when checking the computerized docket.

On January 27, 2005, the foreperson of the grand jury appeared

again before the Court and the correct indictment was returned to

the Court.   The indictment returned on January 27, 2005, was the

indictment presented to the grand jury, voted on by the grand

jury, and approved by the grand jury.   The signatures of the

foreperson and Assistant United States attorney had been affixed

to the indictment on January 26, 2005.

   For the reasons stated above, the United States respectfully

requests that this motion be allowed.

                          Respectfully submitted,

                          MICHAEL J. SULLIVAN
                          United States Attorney

               By: _____
                          DAVID G. TOBIN
                          Assistant U.S. Attorney

# EXHIBIT D

## LOCAL

## Peabody

# Police: Bank teller laundered son's drug money

### By Andrew Hickey
STAFF WRITER

A Peabody woman appeared yesterday in District Court in Boston to face charges that she skirted federal banking laws to launder $18,000 cash that her son allegedly pocketed selling Oxy-Contin.

Eleanor Gould, 47, of 10 Druid Ave, is charged with structuring of currency transactions and aiding and abetting, according to a federal indictment handed up last week, the U.S. attorney's office said yesterday.

Investigators said Gould worked as a teller at the local Metropolitan Credit Union for the past 15 years, and twice made cash deposits of just under $10,000 into an account she shared there with her 26-year-old son, Richard.

*Police said they believe the cash Eleanor Gould deposited was money her son made selling drugs and that she concocted the structuring scheme to avoid detection of the source of the cash.*

Federal law requires banks and other financial institutions to notify the government of cash transactions over $10,000. Investigators allege that Gould was aware of the federal guideline because of her position at the credit union and that she purposely deposited less than $10,000 to avoid having it reported to authorities.

Richard Gould was indicted last August on federal narcotics charges. Investigators have alleged Richard Gould, also of 10 Druid Ave, Peabody, was one of the largest OxyContin suppliers on the North Shore.

He was arrested by Peabody detectives and federal drug agents after an eight-month probe into Oxy-Contin sales. At the time of his arrest, detectives said Gould and his co-defendant, Christopher Alviti of Peabody, had distributed as many

as 30,000 OxyContin tablets within a year on the North Shore. The day they deposited an additional $8,500 cash into an account at Eastern Bank. Immediately after making the deposit, she bought a bank check for $8,500 payable to her son and deposited that check into the shared Metropolitan Credit Union account.

On Aug. 23, less than a week after her son was indicted, Eleanor Gould allegedly deposited $9,500 cash into the joint account at the Metropolitan Credit Union.

Two days after that, the allegedly deposited an additional $8,500 cash into an account at Eastern Bank. Immediately after making the deposit, she bought a bank check for $8,500 payable to her son and deposited that check into the shared Metropolitan Credit Union account.

The indictments against Gould and Alviti were handed up Aug. 18. No age and street address for Alviti were available.

Police said last night they believe the cash Gould deposited was money her son made selling drugs following her arraignment.

If convicted, she faces up to five years in prison followed by three

of the source of the cash.

Eleanor Gould yesterday referred questions to her lawyer, Peter Ball of Salty & Fitch LLP in Boston.

In a short statement, Ball wrote, "Ms. Gould has (pleaded) not guilty. Court rules prohibit tribute and distribution of Oxy-me from discussing the case any further."

Charlene Bauer, senior vice president of retail services for Metropolitan Credit Union, would't say whether Gould has been fired from her teller job.

"We are cooperating with investigating authorities," she said, declining further comment.

Chief U.S. Magistrate Judge Marianne B. Bowler released Gould on her own recognizance

years of supervised release. She could also be fined $250,000.

Richard Gould and Alviti are free on bond and awaiting trial on charges of conspiracy to distribute, possession with intent to distribute and distribution of Oxy-Contin, said Samantha Martin, a spokeswoman for U.S. Attorney Michael Sullivan. No trial date has been set, Martin said. If convicted, each could spend 20 years behind bars and be fined $1 million.

Peabody detectives said in the investigation is continuing and more charges and arrests are expected.

The case was investigated by the Internal Revenue Service, the Drug Enforcement Administration, the Food and Drug Administration, state police, the Essex County Sheriff's Department, the Cape Ann Drug Task Force and the Peabody Police Drug Unit.

Exhibit D