UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 05-10015-PBS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) |
| ELEANOR GOULD, | ) |
| Defendant. | ) |

### DEFENDANT ELEANOR GOULD'S SENTENCING MEMORANDUM

### INTRODUCTION

Eleanor "Ellie" Gould is a decent, hardworking and law-abiding 49-year-old woman who made an error in judgment. And she has paid a steep price for it. Ms. Gould has lost not only a job that she had held for 16 years and truly loved, but she will be unable to ever again work in the banking industry. Ms. Gould has also suffered the embarrassment, anxiety and expense of a federal criminal prosecution. Her conviction here likely will limit her employability in the future, even outside of the banking industry. Ms. Gould has pled guilty to the single crime charged in the indictment and has fully accepted responsibility for her actions.

Ms. Gould suggests that her conviction here and the consequences that have flowed, and will continue to flow, from it are sufficient punishment for her crime. She respectfully requests that the Court sentence her to the most lenient sentence possible, a one-year term of probation with no fine.

The government agrees that Ms. Gould should receive probation, and it has committed in the plea agreement to recommending such a sentence.

**DISCUSSION**

A.   **Background**

Ellie Gould is lifelong resident of Massachusetts' North Shore area. As the Pre-Sentence Report indicates,[1] and as is clear from the several letters submitted on her behalf,[2] Ms. Gould is a warm-hearted person whose principal devotion is to her family. This devotion and Ms. Gould's generosity of spirit were never more evident than when she took in her young nephew, then going through a difficult time. As Ms. Gould's sister has written the Court:

> My older son. . . was starting to get mixed up with the wrong crowd as a teenager, not wanting to finish school etc., I needed to get him out of the environment he was in, Ellie opened her door for him and he lived with her for about a year. Ellie helped set him on the right track. [My son, now 23] and I are thankful to her until this day. I just can't say enough about her other than I love her and she is the best sister, auntie, and person that I know.

Ellie Gould has also always been a hard and capable worker. For the 16 years prior to the indictment on this case, Ms. Gould was a teller at the Metropolitan Credit Union ("Metropolitan") in Peabody, Massachusetts. A review of her personnel file shows that she was an outstanding employee.[3] Ms. Gould consistently received overwhelmingly positive performance evaluations. Her evaluations routinely lauded her job performance – she was referred to as a "terrific," "phenomenal" and "excellent" teller, and in 2001 her branch celebrated "Ellie Day" in recognition of her teller drawer being in perfect balance for two years. The evaluations also are replete with commentary on Ms. Gould as a person, including her sound

---

[1]  As of this writing, Ms. Gould has not received the Final Pre-Sentence Report, but she has received the Draft Pre-Sentence Report.

[2]  Half a dozen family members have submitted letters on Ms. Gould's behalf. These letters have been provided to the Court via the Probation Department.

[3]  The undersigned counsel will gladly provide a copy of Ms. Gould's personnel file from Metropolitan should the Court desire to see it.

judgment and trustworthiness.  In one evaluation, her superior noted: "[I] would fully support any decision made by her.  All previous decisions have been reasonable and well thought out.  When I am required to be away I feel very comfortable leaving my branch in the capable hands of Ellie Gould."  Other evaluations echo this sentiment, as demonstrated by the following comments:  "[Ellie has] very sound judgment and a lot of common sense.  I would support any decision made by her" and "[s]he is very competent, I would back any decision made by her without hesitation."  Ms. Gould's evaluations also tout her interpersonal skills, including her ability to strike the right chord with both her fellow employees and the credit union members.  A small sampling of comments provides a vivid snapshot of Ms. Gould's attitude and performance:  "Ellie regularly provides superior member service.  The members love her.  She's in a perpetual good mood and is always smiling."  "Ellie is an asset to this credit union because of her friendliness and willingness to help. . . she possesses good leadership skills that project to her co-workers and to the membership."  Further, on the basis of one customer's report, Ms. Gould's supervisor emailed her to let her know that she was a "role model."  Ms. Gould's evaluations also contained commentary on her ability to confront difficult situations, noting that "Ellie is not one to shirk her responsibilities" and that "[s]he owns the problems, finds the solutions, and corrects them as soon as possible."  Throughout her many years at Metropolitan Credit Union, Ms. Gould consistently impressed her supervisors, and that superior performance is aptly summed up by this comment in one of her evaluations: "Ellie's overall strength lies in her winning attitude.  She is always upbeat, cheerful and friendly.  Her organizational skills and efficiency in the teller's area are a winning combination.  Overall she is a great teller."

      The good feeling that Metropolitan had toward Ms. Gould was mutual.  She loved her job and intended to stay at Metropolitan for the rest of her career, if possible.

B.     **The Offense and the Sentencing Guidelines.**

The offense conduct from the government's and Ms. Gould's perspective is discussed in the Pre-Sentence Report, and we will not belabor it here. Suffice it to say that Ms. Gould made an error in judgment that was a complete aberration from a lifetime as a law-abiding citizen.[4]

The government's version of the offense refers several times to Ms. Gould's son and his drug dealing. While Ms. Gould is likely being punished to some extent for the sins of her son – it seems improbable that the government would have pursued this case were her son not a suspected drug dealer – Ms. Gould has not been charged with money laundering and the government is not even contending that Ms. Gould knew that the money she structured was "drug money".

Indeed, it appears that this money is not, in fact, "drug money". Rather, it is the proceeds from the sale of a car. For this reason, Ms. Gould believes that pursuant to U.S.S.G. §2S1.3(b)(3), her Guideline Total Offense Level (with the 2-point reduction for acceptance of responsibility) should be 4 rather than 8.

Guideline §2S1.3(b)(3) reads in full:

If (A) subsection (a)(2) applies and subsections (b)(1) and (b)(2) do not apply; (B) the defendant did not act with reckless disregard of the source of the funds; (C) the funds were the proceeds of lawful activity; and (D) the funds were to be used for a lawful purpose, decrease the offense level to level 6.

There appears to be no dispute that conditions "(A)", "(B)" and "(D)" of §2S1.3(b)(3) apply. With respect to Condition C – "the funds were the proceeds of lawful activity" – if the

---

[4] As indicated in the Pre-Sentence Report, Ms. Gould's only previous brush with the law was a 1982 arrest for operating under the influence (when Ms. Gould was 25), which was dismissed.

funds were, indeed, the proceeds of the sale of a car (as Ms. Gould believes), then Condition C would seem to apply.

Ultimately, Ms. Gould's disagreement with the government on this point appears to be academic because both Offense Level 4 and Offense Level 8 lead to the same Guidelines range: 0 to 6 months, meaning that probation is a possible sentence even without a departure or a Booker/Fanfan variance.

### C. The Fallout for Ms. Gould from this Conviction

Ms. Gould was terminated by Metropolitan almost immediately after she was indicted. This has been a devastating loss. Not only will Ms. Gould never again work for Metropolitan, she is finished in the banking industry[5] and, at age 49, has to start all over in another field. After being unemployed for a time, Ms. Gould began work for a jewelry retailer. She decided to go into business with this person selling on Ebay items provided by others. Ms. Gould has concluded that this will not be a successful business venture and she has decided to wind down the company. She is uncertain what she will do next.

### D. The Appropriate Sentence

For the foregoing reasons, Ms. Gould deserves the most lenient sentence possible, a one-year term of probation and no fine. The waiver of a fine is justifiable on several levels. First, as the Pre-Sentence Report indicates, Ms. Gould is of limited means and has been working without

---

[5] On February 15, 2005, Ms. Gould received a letter from Metropolitan's bonding company advising Ms. Gould that her bondability as a credit union employee was at risk as a result of the indictment. (Copy of letter attached hereto as Exhibit A.) On March 22, 2005, after receiving a letter from the undersigned, the bonding company sent a follow-up letter making clear that Ms. Gould would lose her bondability if she were convicted. (A copy of that letter is attached hereto as Exhibit B.)

compensation as she has attempted to build a small business, which business is failing and will be closed.

        **1.**      **Downward Departure Grounds**

Alternatively, Ms. Gould would be entitled to a downward departure from any fine called for by the Guidelines either on the grounds of "aberrant conduct" or "collateral consequences".

        **a.**      **Aberrant Conduct.**  The Sentencing Guidelines allow for a downward departure when a defendant's criminal conduct is "aberrant".  Specifically, U.S.S.G. §5K2.20 allows for such a departure where the offense is "a single criminal occurrence or single criminal transaction" that was committed without significant planning, was of limited duration, and represented a marked deviation from an otherwise law-abiding life.  (See Application Note 1 to U.S.S.G. §5K2.2).  Ms. Gould is the archetypal candidate for such a downward departure.

        **b.**      **Collateral Consequences.**  The Supreme Court recognized in Koon v. United States, 518 U.S. 81 (1996) that collateral consequences are potential grounds for downward departures, even if they are not explicitly provided for in the Guidelines.  For example, the defendants in Koon were unusually susceptible to prison abuse – they were the police officers in the infamous Rodney King case.  Accordingly, the district court did not err in finding that the rough justice the defendants likely faced in prison warranted a reduction of their actual sentence.  518 U.S. at 111-112.  Here, Ms. Gould has lost a job that she loved, had worked at for 16 years and was considering holding the rest of her working life.  In addition, she has likely lost the opportunity to work in the banking industry ever again. [6]  In sum, Ms. Gould

---

[6] While the defendants in Koon were not eligible for a reduction on the basis of their career loss, that disqualification was based on a factor not present here. 518 US at 110-111.  The Court reasoned that job loss is a natural consequence when a government official commits the kind of

should be a candidate for a downward departure on account of the collateral consequences she has suffered and will suffer as a result of her conviction here.

### 2. The Booker/Fanfan Considerations

Booker/Fanfan requires that in addition to considering the now-advisory guideline calculation, the sentencing court must also consider the statutory sentencing factors found at 18 U.S.C. §3553(a). These include the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. §3553(a)(1). The Court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in the statute at 18 U.S.C. §3553(a)(2), i.e. a sentence that: (A) reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense; (B) affords adequate deterrence to criminal conduct; (C) protects the public from further crimes of the defendant; and (D) provides the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

Under all the circumstances here, the fact of the conviction along with the collateral consequences that will flow from it is sufficient punishment when considering the Section 3553(a) factors. Indeed, even the government agrees that probation is the appropriate sentence.

---

violations of rights under the color of law that the Koon defendants committed, and the very specific sentencing guideline that applied in Koon undoubtedly took this consequence into account. Id. Here, however, there is no reason to believe that the relevant guideline takes into account career damage and/or professional bonding consequences. *See also* United States v. Jones, 158 F.3d 492, 498-499 (10th Cir. 1998) (downward departure for collateral employment consequences permissible, given the economically depressed area in which defendant lived).

7

**CONCLUSION**

For the foregoing reasons, Eleanor Gould requests that the Court sentence her to the minimum required term of probation and no fine.

Respectfully submitted,

ELEANOR GOULD

By her attorneys,

_____/s/ Peter E. Ball_____
Peter E. Ball, BBO #546031
Elizabeth J. Koenig, BBO #647122
SALLY & FITCH LLP
225 Franklin Street
Boston, MA 02110
(617) 542-5542

April 14, 2006

**CERTIFICATE OF SERVICE**

I, Peter E. Ball, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). There are no non-registered participants to whom paper copies must be sent.

_____/s/ Peter E. Ball_____
Peter E. Ball

# EXHIBIT A

PERSONAL & CONFIDENTIAL
CERTIFIED MAIL
RETURN RECEIPT REQUESTED


CUMIS Insurance Society, Inc.

February 15, 2005

Eleanor Gould
50 Warren Street
Peabody, MA   01960

RE:  Metropolitan Credit Union
     020-0664-6
     Bondability Determination

Dear Ms. Gould:

We are the fidelity bond insurance carrier of the above referenced organization and have received information regarding your activities or lack thereof.

**Issue:** Indictment for Structuring and Aiding and Abetting. Violation of Specific Federal Laws

This activity has placed the credit union and Credit Union Protection in a position of increased risk. Whenever an individual presents a greater than normal risk, the termination of their bondability with Credit Union Protection is required.

Prior to taking this action, we would like to give you an opportunity to send a detailed written response, with copies of any documentation which supports your position. If you are not able to provide a reasonable explanation, or choose not to respond, your bondability with Credit Union Protection will terminate at noon of the 15th day following the delivery or attempted delivery of this certified letter.

The termination of your Bondability means that you will not be eligible for coverage under any Credit Union Protection Fidelity Bond should you gain employment in, or serve in any capacity with, any credit union or organization covered by a Credit Union Protection Fidelity Bond.

Please send any written response you may wish to make to the attention of the Credit Union Protection Bondability Department, WTC 9 1+3, at the address below within 15 days following your receipt of this letter or by fax at 608-231-7952. **Due to privacy concerns, we will not respond to telephone calls, all communication must be in a written format.**

Sincerely,

Bondability Department
Credit Union Protection Underwriting

P.O. Box 1084 ▪ 5910 Mineral Point Road ▪ Madison, WI 53701-1084
Business: 608/238-5851 ▪ Voice/TDD: 800/937-2644 ▪ Fax: 608/238-0830

# EXHIBIT B

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

**CUNA MUTUAL GROUP**

*CUMIS Insurance Society, Inc.*

PERSONAL & CONFIDENTIAL

March 22, 2005

Peter E. Ball
Sally & Fitch, Counselors at Law
225 Franklin Street
Boston MA 02110-2804

SUBJECT:   Metropolitan Credit Union
Bondability determination for: Eleanor Gould
Our File #: 020-0664-6

Dear Mr. Ball:

Thank you for your letter of representation dated February 25, 2005. At this time we will provide full coverage for Ms. Gould under any Credit Union Protection Fidelity Bond.

However, we will consider modification of her Bondability with Credit Union Protection if one of the following occurs:
1- She is found guilty of, or plead guilty or nolo contendre (no contest) to, any misdemeanor or felony pertinent to any Credit Union Protection FidelityBond.
2- She enters into a nolle prosequi (no prosecution) diversionary program for any misdemeanor or felony pertinent to any Credit Union Protection Fidelity Bond.

By copy of this letter, I'm advising the regulators and the credit union of our position.

Please advise the status of her situation when the case is concluded.

Sincerely,

*Wayne Scholze*

Wayne Scholze
Manager/Bondability
Credit Union Protection Underwriting